The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. However, pursuant to its authority under G.S. 97-85, the Full Commission has modified the Deputy Commissioners decision and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing on 17 November 1998 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
4. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant.
5. Plaintiffs average weekly wage on the date of the injury giving rise to this claim will be stipulated to by the parties pursuant to a Form 22 wage chart, although no Form 22 has been provided to the Commission.
6. Plaintiff received $8,301.02 in short-term disability payments.
7. Plaintiff received $6,831.00 in unemployment benefits.
8. Should benefits be awarded in this matter, defendant would be entitled to a credit for the short-term disability benefits and the unemployment benefits received by plaintiff.
9. In addition to the deposition transcripts of the medical experts, the parties have stipulated into evidence in this matter a packet of 111 pages of plaintiffs medical records, and defendants exhibits one through eleven.
10. The issues to be determined are whether plaintiff sustained an injury by accident or specific traumatic incident on 19 April 1996; if so, whether plaintiff was disabled; and to what benefits, if any, is plaintiff entitled as a result of the injury by accident or specific traumatic incident of 19 April 1996.
***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in the matter on 17 November 1998, plaintiff was forty-nine years old and was not working in any capacity. Prior to becoming employed by defendant in 1993, plaintiff had worked for twenty years as a truck driver. Plaintiff has a degree in mechanical engineering.
2. Plaintiff has a significant medical history of back problems predating the injury giving rise to this claim. According to records from the Veterans Administration Hospital, plaintiff was rated in 1970 and again in 1971 with a permanent disability to his back due to intervertebral disc syndrome and lumbar herniated nucleus pulposus with nerve root compression. In addition, plaintiff was seen from 28 June 1972 through 10 February 1973 by Dr. Keith, a chiropractor, for back problems stemming from a motor vehicle accident. This chiropractor referred plaintiff to Dr. Robert E. Miller, an orthopedic surgeon at The Miller Clinic, who treated plaintiff for neck and low back pain from August through December 1972. Plaintiff thereafter returned to the chiropractor on one occasion in 1980, once in 1987, twice in 1988, and then Dr. Keith again treated plaintiff from 7 September 1990 through 27 May 1991 for recurrent low back pain with left lower extremity involvement. There are no medical records to show that plaintiff sought treatment from any medical care provider from 27 May 1991 through 19 April 1996 for complaints of low back or left leg pain.
3. Plaintiff was hired by defendant as a local truck driver in July 1993. Plaintiffs job as a truck driver required him to load and unload his truck as he made deliveries. Plaintiff was required to lift items that weighed up to several hundred pounds each.
4. On 19 April 1996, a Friday, plaintiff was delivering boxes of yarn to Carolina Cook Finishing. While moving boxes of yarn that had fallen on top of other freight, plaintiff testified on direct examination that he felt a sudden sharp pain in his low back that radiated down to his left leg. However, in his recorded statement that took place on 28 February 1997 and also on cross-examination, plaintiff indicated that he had hurt his back when he was bending over attempting to move one of the boxes and a large box of yarn fell and struck his back. There were no witnesses to either event.
5. Plaintiff testified that later that day he called dispatch and told the dispatcher that he had hurt his back moving freight. One of plaintiffs coworkers corroborated that he heard plaintiff make this call to dispatch. However, despite the fact that plaintiff had worked for defendant for three years and there were only four dispatchers employed by defendant, plaintiff was unable to identify the dispatcher with whom he spoke that day; therefore, plaintiffs claim that he notified dispatch about his injury could not be corroborated by a dispatcher.
6. The terminal manager to whom workers compensation injuries were to be reported testified that plaintiff approached him on a Monday morning and said that he had hurt his back and wanted to see a chiropractor during his lunch hour. Plaintiff told the terminal manager that he "needed relief from his back pain and that he may have done something over the weekend to it. Plaintiff did not tell the terminal manager that he had hurt his back at work while moving freight.
7. Although it is unclear from the evidence when the exchange took place, a dispatcher for defendant testified that he did have a conversation with plaintiff in which plaintiff indicated that he could not make an afternoon pick-up because he had an appointment with a chiropractor. The dispatcher told plaintiff during this conversation that he would have to follow normal procedures if this were a work-related injury, but plaintiff denied a work-related injury.
8. Defendants personnel manager, who handles the insurance and benefits for employees of defendant, indicated that she was not aware that plaintiff was claiming a work-related injury until several months after the incident when the general health insurance denied coverage for plaintiffs chiropractic treatment. These bills were ultimately paid by plaintiffs group health insurance.
9. Plaintiff filed his Form 18 Notice of Accident with the Industrial Commission on or about 11 February 1997, ten months after the alleged injury by accident. Plaintiff was terminated by defendant on or about 25 February 1997 when his disability leave had ended and he had not returned to work.
10. Plaintiff first sought medical treatment after the incident of 19 April 1996 on 23 April 1996 when he went to see Dr. Kucera, a chiropractor. At this time plaintiff complained of low back pain with left leg pain and numbness. Dr. Kucera treated plaintiff through 19 July 1996, then she recommended that he undergo a neurosurgical consultation because his symptoms were not responding to her treatment and were suggestive of a herniated disc with nerve involvement. However, plaintiff did not see a neurosurgeon at this time.
11. Plaintiff, who had continued to work for defendant from the date of the incident on 19 April 1996, next saw Dr. Sellers, an orthopedic surgeon, on 5 September 1996. At this visit plaintiff was in marked pain and was in fact unable to sit but instead was lying on his side on the examining table. Dr. Sellers diagnosed probable left HNP, ordered an MRI, and took plaintiff out of work. This MRI confirmed Dr. Sellers diagnosis, and plaintiff thereafter underwent a laminotomy at L4-5 performed by Dr. Sellers on 16 September 1996.
12. Plaintiff did not improve post-surgery, so he underwent a second surgical procedure on 10 October 1996. This surgery was also not successful, so Dr. Sellers performed a decompression laminectomy at L4-5 on 19 December 1996.
13. Following this third surgery, plaintiffs left leg pain worsened. Plaintiffs continued lack of improvement led Dr. Sellers to refer plaintiff to Dr. Redding, a neurosurgeon. Dr. Redding performed a fusion at L4-5 using pedicle screw fixation on 26 December 1996, which initially provided plaintiff with a "relatively pain free interval through June 1997. Plaintiff continued to follow up with Dr. Redding through June 1997, at which time Dr. Redding noted that plaintiff had a recurrence of the bilateral leg pain. Dr. Redding felt that no further surgery or work-up was indicated at that time, and referred plaintiff to the Southeast Pain Clinic.
14. After June 1997 plaintiff was not seen again for medical treatment until 26 February 1998 when he returned to Dr. Redding upon the advice of his attorney. While plaintiff informed Dr. Redding at this appointment that the surgery had offered no improvement in his condition, this assertion cannot be found credible given the fact that plaintiff was able to walk into the examining room for the February 1998 appointment, whereas prior to his fusion plaintiff was incapable of walking.
15. Although plaintiff may have done something to hurt his back at work on 19 April 1996, plaintiff has failed to produce sufficient evidence to meet his burden of proving that he sustained any compensable consequences.
16. There is insufficient evidence of record from which to prove that plaintiffs disability beginning in September 1996 was causally related to an incident occurring at work on 19 April 1996.
17. Plaintiffs delay in providing defendant with written notice of his alleged work related injury was reasonably excused given that he claims to have not known the severity of his condition initially. Also, the evidence indicates that plaintiff reported an injury to a supervisor and other officials at defendants place of business. Consequently, defendant had actual notice of plaintiffs claim of a work related injury and was not prejudiced in any manner by the delay in receiving written notification.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Because plaintiffs delay in providing defendant with written notice of his alleged work related injury was reasonably excused and the fact that defendant was not prejudiced in any manner by this delay, plaintiffs claim is not barred. G.S. 97-22.
2. Plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment on 19 April 1996. G.S. 97-2(6).
3. Even if plaintiff did sustain an injury at work on 19 April 1996, plaintiff did not meet his burden of establishing by expert medical testimony that any disability he may have had subsequent to September 1996 was casually related to any specific trauma or the rupture of an intervertebral disc. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
4. Because plaintiff did not carry his burden of proof in this matter, he is not entitled to benefits under the Act. Id.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms, with modifications, the Deputy Commissioners holding and enters the following:
 ORDER
1. Plaintiffs claim for workers compensation benefits must be and the same is HEREBY DENIED.
2. Defendant shall pay an expert witness fee in the amount of $250.00 to chiropractor Keith for his deposition testimony in this matter.
3. Defendant shall pay an expert witness fee in the amount of $250.00 to chiropractor Kuchera for her deposition testimony in this matter.
4. Each side shall bear its own costs of this proceeding.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER